Our first case is Cooley Systems v. Vidal, 2022-12-21. Mr. Tremont. Thank you, Your Honor. May it please the Court, Reuben Chen from the Cooley LLP Law Firm, on behalf of Appellant and Patent Owner, Cool IT Systems, Inc. Your Honor, central to this appeal is the claim term, matingly engaged, and the Court here can decide under de novo review based on the strength of the intrinsic evidence, the correct meaning of the combined words, matingly engaged, and reverse the Board's partial construction and decision, which fails to properly take into account either word, let alone their combination. Cool IT's construction of matingly engaged is mechanically joined or fitted together to interlock. This construction, as I'll further explain, is supported by both the intrinsic evidence as well as the extrinsic evidence. If I could interrupt you, the word interlock is giving me trouble, frankly, because it seems to me it's one of those words which, if you use it to construe another term, you still have to construe the term interlock. You really haven't made a whole lot of progress, it seems to me. By interlock, I'm not sure whether that means, for example, do you think a ball and socket joint interlock? That is one form of interlocking, Your Honor. Even though there's no locking there, if you have a ball and socket, assuming you don't have some pressure on both ends, you simply lift them up and the ball falls out, there's no locking, right? Oh, I do think there needs to be some sort of locking. So you need to adhere, if I had a ball and a socket, and I put the socket here and put the ball here and hang them up, and I move my hand and the socket fell out, or the ball fell out, you would say that's not interlocking? Actually, let me take that back. I do think that it is interlocking because it cannot move in one particular direction, Your Honor, that's correct. But it doesn't have to be locked, I mean, like you can't pull it apart. Well, the definition, the only dictionary definition that's in the record for interlock says that it has to engage with each other by overlapping or fitting together, right? Which, by the way, does not support the board's partial construction of fitted within, right? It needs to fit together, there needs to be overlapping. Let me give you another example, just to get clarity in my mind as to what you mean when you say interlock. Yes. You probably are familiar with the WeatherTech coverings, liners that are used in cars to protect the interior of the car. You just take something, which can be customized for a particular car, you put it down and it keeps the mud and dirt from getting on your car's floor. Yes. They fit down onto the floor of the car, but you pick them up, shake off the dirt and put them right back down. Are they interlocking in your view? So, I'm not as familiar with the WeatherTech weather floor mats. Understand that it fits the hump in the car. It fits, but it's not locked in, in the sense that it doesn't, you can pull it up. I think that would also be interlocked, because it would prevent them from sliding in a particular direction. In that way, there is locking that's happening. Just with the ball and socket, like you said, there is a prevention of the components from moving relative to each other in at least one plane. Why wouldn't it be sufficient to say that the two surfaces have similar shape, corresponding shapes? That is one form of interlocking, Your Honor, but I think there are other forms of interlocking, for example, with the highlighters, for example. This isn't exactly a contour to the shape of this stud, but because of the diameter of the stud being slightly larger than the diameter of these channels or pins that hold the cap and butt together, there is interlocking in that particular example, which is obviously an example that I had used at the PTAB hearing, Your Honors. Is the concept of force having to be applied somehow part of what you think is the proper construction of mating linkage? Your Honor, I believe there needs to be force in a certain direction, not in all directions. So for example, for this particular type of interlocking, yes, there needs to be force. For example, in that ball and chain example, or when you have contoured surfaces, there may not need to be force in all directions, right? Because they can fall apart. But part of the construction that you think the board should have used would require force to have to be imparted in at least one direction? Is that what we should understand as your construction? That's right, Your Honor. So if you look at the only embodiments of the specification that show matingly engaged, you can see these recessed region, right? It's not the entirety of the second side, by the way. It's only just the region of the second side. And the compliant member fits into that recessed region. And in a particular plane, yes, you do need force in order to separate them. But if you were just to take apart the components, sure, they would fall apart. And they're not fused together. They would fall apart. Would you accept as equivalent to your construction, as I'm now understanding it, matingly engaged to mean fitting together with complementary shapes? I would accept that. I think that is more narrow than what interlock means. Really? Because there are ways to interlock that don't require complementary contoured shapes, like the highlighter example that I just showed. So I'm willing to accept it. Because I do think that the lion reference doesn't disclose that. But I do think that's too narrow of a construction. And the construction that we have provided is supported by the intrinsic evidence, as well as the extrinsic evidence. I'd like to go to the intrinsic evidence first, and then talk about the extrinsic evidence. Which also includes, actually, a court decision from the Federal Circuit, the Lyle decision versus AJ Manufacturing Company, 398 F3rd 1306 at Pennsite 1313 to 1314. If we accept the boa's construction, do you agree that lion meets that meaning? I do not, Your Honor. If Your Honor accepts the board's partial construction, it does not for two reasons. The first is that lion is not fitted within. It's not fitted within. And the reason is, all that lion's plate 240 is doing, if you look at figure 5, is abutting the second side of the housing. If you look at figure 5, this plate can slide up and down, as well as there's a little bit of room here. It can slide left and right, if it were not for these tabs 242 and fusing. And fusing is not the same thing as matingly engaged, because you cannot decouple these components, and it also is not mechanically. How about the tabs? Why don't the tabs provide the matingly engaged component? Well, the tabs are not touching the second side of the housing at all. The tabs are bent over the fins, and so they are not a compliant member that's matingly engaged to the second side of the housing. So they're not matingly engaged to the micro channels, is that right? They're matingly engaged to something, I assume. I don't think the claim uses that term to describe what the tabs is doing. The way we're using it. The tabs keep the plate firmly in place in a particular place. That's correct. You're saying it's not the right place. That's right. That's exactly right. That's exactly right, Your Honor. And the second reason... Yeah, the fusing. Can you talk about that? How do we know that fusing is not matingly engaging? Right. So the same board in a related IPR, IPR 2020-825, found that the only type of connection between the plate 240 and the flat second side of the housing is fusing. They flat out said that, and their decision here, they don't rely on fusing to argue that the plate 240... But why is fusing not matingly engaging? What tells us it has to be able to be taken apart as well? Absolutely, yeah. So with respect to fusing, number one is that it doesn't allow for decoupling of these components, and it doesn't satisfy the correct construction, which is mechanically joined or fitted together to interlock. There's no... It's not mechanical, right? These are chemical bonds that are being created either by welding a structure so that it becomes unitary, uniform, so it's no longer matingly engaged, it's uniform, right? Or you have to actually add some sort of material in between, some sort of bonding material to connect these two pieces, and then these two pieces are not even connecting with each other anymore. They're connecting with the bonding material. So for those reasons, fusing does not satisfy matingly engaged. I assume you think that in the board's decision, it wasn't lying, it was just wrong. It was wrong, that's correct, yes. That's exactly right. And the second reason why, you know, even under the board's partial construction, Lyons plate 240 doesn't satisfy the board's own partial construction as the board said, fitted within the recessed region defined by the second side of a housing member, right? So the recessed region has to be defined by the second side of a housing member. And with respect to these earlier embodiments, this top cap 244 is completely flat. These perimeter walls may define a recess,  and I'll put emphasis also on the word region, right? So in these later embodiments that only were added as new matters in 2011, it's a region of the second side, not the entirety of the second side that is recessed. And so Lyons plate 240 doesn't satisfy the board's own partial construction for that reason as well. I think you told us that extrinsic evidence favors you as well. Yes. If we, do we have to reach the extrinsic evidence just because the board did? And if we do, don't we review their review of it deferentially? Yes. If you do have to go to extrinsic evidence, it would be under substantial evidence review. Your honors are correct, but you don't need to go there. Intrinsic evidence under de Novo review supports Cool IT's proposed construction. Also, there is just no evidence. Extrinsic evidence does not support the board's construction. And this is why the board relied on two things, right? Number one is dictionary definitions. The only dictionary definitions of mate and engage support essentially verbatim Cool IT's proposed construction. Asetek did not submit any competing definitions of mate or engage. Asetek did submit a dictionary definition for the term interlock. But Asetek has withdrawn from the case? That's correct. You're into your rebuttal time. You can continue or save it. Oh, I'll just finish real quick on interlock. So with respect to interlock, the full definition of interlock is to engage with each other by overlapping or fitting together. That's not the same as the board's partial construction of fitted within. And the intrinsic evidence with the prosecution history, the new matter being added in 2011, that uses the terms matingly engaged and recessed region. Those terms, matingly engaged and recessed region, never appear in the earlier 2007-2009 line reference. The claim construction itself, with the requirement of the second side having a recessed region, supports Cool IT's construction. And then the same board decided in a related IPR that the only type of connection between plate 240 and the line reference is fusing with the second side of the house. Fusing is not the same thing. The two are inconsistent, the prior IPR and the present IPR, with respect to their treatment of fusing. That is absolutely correct, your honor. So what says that they got it right the first time and wrong this time as opposed to the other way around? Oh, maybe there's a little bit of confusion in what I said. The same board found that the only type of connection between plate 240 and the second side of the housing is fusing. So we agree with that. That is the intrinsic evidence. That's a final decision at this point since it's not being appealed. And so that's the only type of connection between plate 240 and the second side of the housing. But the current board seems to be saying the contrary. They're saying there is... Yes, you're right, they're being inconsistent. So why is it that the current, we have to assume the current board is wrong given that the same board previously said something to this contract as opposed to the other way around? Why aren't they... Why didn't they suddenly wake up and decide this time that there was something else that was fitting and that the first time they were wrong? Well, this board's decision actually doesn't rely on fusing. They specifically say... Fusing isn't necessary. Sorry? They say fusing was not a necessary element of the model. That's right. They're saying we're not relying on the fact that plate 240 is fused to the second side of the housing. That's essentially what the board in this IPR is saying, which I think that's the only type of connection that that same board found. So their decision doesn't make sense to me. Counsel, your time has expired. Thank you. Appreciate that, Your Honor. Ms. Lateef. Thank you, Your Honors. Good morning. May it please the court. I just want to remind this court that this is a continuation in part. And to the extent that Pellon is up here trying to say that the construction of the term matingly engaged requires interlocking, they could have put that in their claims and they didn't. There is nothing in the intrinsic evidence here that would suggest that matingly engaged is anything other than what this board found, which is that a partial component of the compliant member is fitted within the recess region of the second side of the housing. This idea that interlocking somehow is a requirement, it's not seen in the claims. It's not seen in the specification. It's not in the prosecution history. And then, of course, the board also looked to extrinsic evidence to determine whether or not their construction was accurate. But mating is almost like interlocking. But almost like is not the same thing. It's a fitted. All you need is a portion of the compliant member to be fitted within the recess region of the second side of the housing. Yes, there needs to be some sort of, I think the question earlier today was about force, whether there need to be something there. But that doesn't require interlocking. In the same example you gave, Your Honor, about having a ball fitted that it could drop out, that wouldn't be necessarily interlocking. You don't need that here. You just need it to be matingly engaged, fitted within. Do you think that part of the matingly engaged contemplates the presence of, what's the terminology, complementary shapes that I think was discussed? No, Your Honor. Why not? That feels like, if they're not complementary, how are they mating? Well, the board looked at what the claims and the specification described, and it just needs to be fitted within. It just needs to fit within that part of the housing so that when the coolant enters, the inlet and the outlet are closed off and it forces the coolant to go through the microchannel instead of coming out of the inlet and outlet. But that seems to me, you can satisfy that with just the term engaged. But you've got the term matingly engaged. So matingly has to carry some force. Well, that's the fitted within part, right? But what is fitted within? I mean, a chair can fit within a room, and that's not what we have in mind, obviously. Right. What do you mean by fitted within? Fitted snugly? Is that what you have in mind? So according to this particular invention, the heat exchanger, it has to be fitted within such that the coolant can't escape out of the inlet and the outlet. That's a functional description. But what do you mean by the general term fitted within, and why is that not going to be equivalent to having coordinating shapes? So it's not as if, to be clear, I didn't mean to suggest it's not, that coordinated shapes wouldn't satisfy that. What I was really trying to say is that's not the only way it could be satisfied. You don't need the coordinated shapes to satisfy fitted within. The coordinated shapes narrows the definition. Well, it fits within, but how about matingly? I'm sorry, the matingly engaged is satisfied. According to the board, when they looked at the summary of the invention, and they looked at the claims, and they went throughout the spec, it's satisfied when you have a portion of the compliant member fitted within. You could have complementary shapes, but that's not the only way to have matingly engaged. And this idea that you want some sort of interlocking is much more narrow than what the claims and the specification are asking for. If you look at the summary section- I'll ask you before you move to that, the claim language also requires the occupying a portion of the recess, correct? Yes. So how is the board's construction not rendering that limitation superfluous? When you describe what it means to fit within, it sounds to me like occupies a portion. Is there any difference between the two? Difference between the two of occupying a portion and fitted within? Well, yes. Because the board says matingly engaged means fit within. So my concern is that construction is so broad, it occupies a portion doing nothing in the claim. So the occupy a portion, you're sort of talking about that last section in the claim, that last limitation, that's defining how the manifold is formed. And so that occupying a portion, that's not language that is used to talk about how the compliant member and the housing are fitted together. The compliant member is the manifold insert, is it not? It is, but it's talking about how it's designed. So that last section that you're looking at, that limitation, is talking about sort of how the exhaust manifold is formed by the compliant member of the house, I'm sorry, and the housing. I'm looking at, yeah, that last limitation, wherein a portion of the compliant member occupies a portion of the recessed region defined by the second side of the housing member. Yes. Is that not the same place we look to for whether there's mating engagement between the compliant member and the housing? No, because it is not the same place, because what that is doing is talking about how you're defining how the exhaust manifold, sorry, manifolds, excuse me, are formed. When you go up to the part where we're trying to construe matingly engaged in that third limitation, that's talking, and it's, so if you kind of read more, it's talking about explaining how it works with the microchannels. That's where you're talking about matingly engaging them for the purpose of having the coolant sort of have this divergent act to go through the microchannels. So in response to the argument, which I think is in the blue brief, that the board's construction renders, occupies a portion entirely superfluous, you say no because it's- Because that's describing a different, that's not describing how the compliant member is matingly engaged with the second side of the housing. That's describing how you, how the compliant, I'm sorry, how the manifold, exhaust manifold are formed within the housing. They're not doing the same work. So it doesn't make it superfluous. Do you agree with Mr. Chen in response to one of my questions that the tabs that are shown on the, as early as line 2007, do not have the role of giving us direction as to what mating is, a matingly engaged function. Do you understand the tabs I'm talking about? I do understand the tabs you're talking about. I'm not sure I understand your question. He said, well, they're not, they don't contribute to the mating engagement because they're not engaged to the right thing. They're engaged with the microchannels, not with the housing. Is that- Yeah, I'm not, I'm not sure that I agree. But I want to be clear as I answer that question that the board never made findings with respect to whether or not lion is obvious under their construction. So this idea, basically the argument is under the board's construction, lion is obvious. And I guess Mr. Chen is arguing, well, no, because those tabs make it so that it can adjust the, I think his argument was, I think his argument is essentially that, well, the tabs are there and they may well secure the plate to the microchannel, but they don't secure the plate to the housing. Yeah, I don't agree with that. And I'm not exactly sure why that, I do not as I read the spec and I'm not exactly sure why he does. In what way do the tabs engage the housing as opposed to the microchannel? Well, when the plate and the, let me just turn to it real quickly, please. Your Honor. You're looking for the- Figure five, I'll find it. Just had to get to it. Okay, so the plate and the seal are kind of what work together to be considered the compliant member here and that fit within the housing, and my and the plate and the seal form together. And so the tabs are just on the ends of that plate. And so they are a part of the plate, like they make up the plate. So when that is being, when the seal and the plate are together and they're in the recess region of the housing, it's not a separate thing. I'm not looking at the tabs separately in the way that Mr. Chen is. There's nothing in the specification that tells me that I should, and I'm, I don't agree that that should be somehow separated out. They're just a part of the plate that gets connected within the recess region. Connected to what is the question? Or fitted within, I should say, the recess region of the housing. Right, but what is it connected to? What do the tabs connect the plate to? Do they connect the plate to the housing is the question. Yes, in the sense that it's, it's in the recess region of the housing. I mean, I hesitate to use connected, and I think I did that. I didn't mean to throw you off, but there's a piece of the seal and that plate that are within the recess region of the second side of the housing. And that's all that is needed for Lion to fit within the construction that the board came up with. Now the board didn't rely on the tabs. No, the board talked about the plate, but the tabs are a part of the plate. The board didn't parse it out. The tabs are not a separate thing from the plate. Well, the feature of the plate, it differentiates the plate from just a flap. Correct, Your Honor. But under the construction, all you need is that you have a partial part of the compliant member being recessed within the housing. So that compliant member here would be the seal and the plate together. Counsel, is this patent expired? I apologize, Your Honor. I'm not sure. I have to look. Is there any embodiment disclosed in the specification that you would view as being read out of the claims or excluded from the claims under the patentee's construction? Is it too narrow to even capture all the embodiments that are disclosed in the specification? Is that an argument that you make? That's not an argument that I made in my briefing. But what I would say is, yes, in the sense that interlocking is two. Figures one through three don't require an interlock. So the fact that interlocking is so narrow, maybe that's something I should have said, but absolutely that would be, all they have is a partial part within the second side of the housing. And if you look at the summary that kind of describes that, it literally says a partial part of the compliant member sits within the housing. So it may not be explicit in my briefing, but I would absolutely stand here and say that those figures would, their construction is too narrow to satisfy those two. I want to get back to the puzzle of the term interlock, which I, again, from the beginning, struck me as a term that's very unhelpful. What do you understand by the term interlock? The way I understand it is that you have contoured pieces, complementary contoured pieces, like Legos. So the way you have... Or a ball and soccer. I would not call those interlock necessarily based on my understanding of what patent owner wanted. That is not the term that the board is using. I understand that. I'm just examining you on somebody else's terms. That's okay, but my understanding of interlock would not be that example. I literally think there needs to be contoured complementary pieces that lock together. If patent owner meant something else, that's possible, but they should have laid that out in their specification and it should have been listed in the claims. What I understand their position today is that they don't necessarily lock together, but they resist movement in at least one direction. That may be. Which would be true of the ball and soccer, for example. Sure. Or the WeatherTech service. I agree. If that's what they understand that may be, but that doesn't change the facts here, but that's not in the specification. That's not in the claims and the board's construction is in line with the intrinsic evidence and the extrinsic evidence. On the prosecution history, is there a way to read it as supporting the board's construction or is it at best just neutral and we shouldn't put any weight on it? It's at best neutral. If you look at my briefing, I was talking about how it has to be a clear disavowal here. If they wanted the interlocking and it's kind of either ambiguous or silent at best, the prosecution history. So there was nothing there that would cause the board to narrow their construction to interlocking. And what about sealing? Is sealing something completely distinct from matingly engaged in the board's view? So the board said that it must... Let me back up and just say the board did a partial construction here. They didn't look at all the ways in which something could be matingly engaged. Under this partial construction that is before us today, fitted together, I think sealing would probably be too far. That it would not be fitted together. However, again, the board didn't... This is a partial construction. Based on the dispute that was before the board. And it didn't look at all the ways that matingly engaged could occur. It just said, this is the dispute. So we're just going to look at whether it's interlocking or not. Not the varying ways. And so they didn't really come to that conclusion. Whether it would fit or not because they didn't have to because that was not what was before them. And so if there are no further questions, I respectfully ask that you affirm the board's decision. Thank you for your time. Mr. Chairman, is this patent expired? Um... What's this litigation all about? I don't think so, Your Honor. I don't think the patent is expired. Apologies for not having that answer. What's the effective filing date? The effective filing date... The priority date goes back to 2000... Okay. Sorry, the priority goes back to 2011. Excuse me. Is there a litigation going on now? No, there is not, Your Honor. That's correct, Your Honor. Two minutes, please. Thank you, Your Honor. And I'll be quick. There's just four points that I want to make. With respect to tabs 242, I would direct your honors to column 12 of the patent. This is appendix 1722, lines 15 to 21, which make it clear that the tabs do not actually abut the second side of the housing. The tabs are bent over the walls, the fins of the microchannels. The second point is, I heard counsel use the word fitted together, but that's not the same thing as fitted within. So a sex expert used the word fitted together just to describe the ordinary meeting of what he considered to be matingly engaged. But that's not the same thing as what the board's partial construction is, which is fitted within, fitted together, fitted within different... With respect to the term interlock, to your honors question, there are... It comes straight from the dictionary definition, which is interlock. And there have been a number of courts, including the Federal Circuit's Lyle decision, which affirmed... What's the name of the Lyle case? It wasn't in your brief, I don't think, was it? It wasn't in our brief. We did cite other cases in footnote nine of our opening brief. It was in the record. It's on appendix... It's more helpful if it's in the brief. Yes. What's the site today? Yes. The Lyle case is 398 F3rd 1306 at Penn site 1313 to 1314. And in our brief, in footnote nine of our opening brief, we cite to a number of district court decisions that found engage means interlock. Are figures one to three within SCOFIA claims? Figures one through three of the 567 patent, Your Honor, that's your... Of the patent that we're reviewing. Not the line reference, right? No, the 567. 567, figure one is, but not two and three. Figure one is just this very generic sort of block diagram that doesn't actually show... And what about the occupies a portion part of the claim limitation? Is counsel on the other side right that that really has nothing to do with what we're talking about? No, I actually disagree with that, Your Honor. That does have to do with what we're talking about. And I do think Your Honor is correct that it would be rendered superfluous with a really broad construction of matingly engaged. It essentially would render that particular limitation superfluous. She said it had to do with something different. That it had to do with how the manifold is formed, if I understood correctly. Why is she not right about that? It recites wherein a portion of the compliant member occupies a portion of the recessed region defined by the second side of the housing member. I think it's specifically talking about the compliant member and the second side of the housing. So I am... Which is the same place we have to look to for mating engagement? That is correct. That is correct, Your Honor. And my final point is actually in agreement with counsel that sealingly engaged is different. And there's actually a different claim. Claim 28 that claims sealingly engaged. And with that, if there are no further questions, and I respectfully request that Your Honor's reverse reports. Thank you, counsel. I don't know about many of you, but the court is fully engaged. Thank you. Really appreciate it.